**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **A.G., D.W-1, L.W., and D.W.-2**

**No. 21-0553** (Kanawha County 20-JA-522, 20-JA-523, 20-JA-524, and 20-JA-525)

**MEMORANDUM DECISION**

Petitioner Father D.G., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's June 14, 2021, order terminating his parental rights to A.G., D.W-1, L.W., and D.W.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth G. Kavitz, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to reinstate his post-adjudicatory improvement period, denying his motion for a post-dispositional improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner and the mother engaged in domestic violence in the children's presence. According to a DHHR worker, the mother showed bruising allegedly caused by petitioner, and the mother stated that petitioner was controlling and aggressive. Then-five-year-old L.W. and then-six-year-old D.W.-2 disclosed that petitioner "grabs and hurts mommy." The DHHR also alleged that the mother abused methamphetamine.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as D.W.-1 and D.W.-2, respectively, throughout this memorandum decision.

1

The same month, the circuit court held a contested preliminary hearing. The DHHR worker testified that she responded to a referral concerning a domestic violence dispute between petitioner and the mother, and that when she interviewed the mother at the domestic violence shelter, the mother showed her injuries she stated were caused by petitioner. The mother reported that petitioner was aggressive with her when she tried to leave and that petitioner "controlled her and has been physically, verbally violent with her." The worker stated that the two oldest children identified petitioner as the aggressor and stated that he hits, slaps, and punches the mother. Further, the worker stated that the DHHR opened a prior investigation of the couple in April of 2020 due to domestic violence. She explained that petitioner was receiving services to address his domestic violence problem when the incident occurred that resulted in the petition's filing. The worker described her interview with petitioner, stating that he told her he "never put his hands on [the mother]" and that the mother was the aggressor. Petitioner also stated that he believed the mother was abusing drugs.

Petitioner then testified that physical violence only occurred when the mother hit him and that he regularly called the police. He stated that he did not argue with the mother in the children's presence and did not understand why the oldest children said such things to the worker. Petitioner generally denied domestic violence, physical violence, and shouting but admitted that he did not allow the mother "to talk[] to men" and thus did not allow her a cellphone. Further, petitioner admitted violating a recent domestic violence protective order by sending messages to the mother via his adult child. At the conclusion of petitioner's testimony, the circuit court ratified the children's removal from petitioner's home.

In December of 2020, the circuit court held an adjudicatory hearing, during which petitioner stipulated that he exposed the children to domestic violence. The court adjudicated him as an abusing parent and ordered petitioner to participate in parenting and adult life skills classes, domestic violence education, and anger management classes.

The circuit court held a hearing upon petitioner's motion for a post-adjudicatory improvement period in February of 2021. The court "unenthusiastically" granted him a post-adjudicatory improvement period, stating "you better be participating in any and all services perfectly, particularly the services as they relate to your domestic violence training. Because if you don't, I will terminate the improvement period." Thereafter, the results of petitioner's psychological evaluation were returned and showed that petitioner denied ever hitting the mother and continued to claim that she was always the aggressor. The evaluator concluded that because petitioner minimized his involvement in the domestic violence there was an increased risk of continued violence in the home. The evaluator also noted that petitioner did not know the ages or birthdays of the children. Due to petitioner's history of domestic violence incidents with the mother and his minimization of the same, the evaluator concluded that petitioner had a "highly guarded" prognosis for achieving minimally adequate parenting.

In April of 2021, the parties appeared for a review hearing, during which the DHHR and the guardian moved to terminate petitioner's improvement period. The DHHR indicated that petitioner told his therapist that he was participating in counseling only because he was ordered to do so and denied any anger issues. The court also received a Court Appointed Special Advocate report recommending that petitioner's visitations cease due to his denials of anger management

problems and domestic violence issues, and general lack of meaningful compliance in services. The court also noted the results of petitioner's psychological evaluation, which showed petitioner's minimization of his involvement in domestic violence. The court stated that petitioner failed to "even admit that he engaged in physical aggression and interactions." At that time, the circuit court found that petitioner was not in substantial compliance with his improvement period, ordered that services cease, and set the matter for disposition.

In June of 2021, the guardian filed a report in which she recommended the termination of petitioner's parental rights. According to the guardian, the children had made repeated and consistent disclosures of domestic violence in the home, and one child said that petitioner was "very mean" to him and his siblings. The guardian noted that petitioner consistently minimized the domestic abuse in the home and appeared to fail to acknowledge any responsibility at the recent multidisciplinary team meeting. Candidly, the guardian explained that none of the children wished to have contact with petitioner. Based on these facts, the guardian recommended termination of petitioner's parental rights.

On June 4, 2021, the court held a dispositional hearing. The DHHR presented evidence that petitioner did not meaningfully participate in services as he continued to deny his involvement in the couple's domestic violence. Petitioner admitted that some of his actions with the mother constituted abusive behavior, such as his withholding the car keys and cellphone. However, petitioner continued to deny perpetrating physical domestic violence against the mother, admitting to only arguing with the mother late at night. He stated that the children had lied about witnessing him hurt the mother, but they were truthful when they reported seeing the mother hit petitioner. Concerning the mother's drug use, petitioner stated that methamphetamine was not a "bad" thing and only keeps users "up all night." According to petitioner, parents abusing methamphetamine could adequately parent children.

At the close of evidence, petitioner moved that his post-adjudicatory improvement period be reinstated, or in the alternative, that he be granted a post-dispositional improvement period. The court noted that petitioner was granted an improvement period that was terminated for lack of meaningful participation and petitioner's failure to take any responsibility. Regarding petitioner's testimony, the court stated that it had never heard "more incredible testimony from anybody on the stand." The court found petitioner's testimony was "self-serving," stating "[a]nything that benefited you, you deemed truthful," but "[a]nything that you thought was remotely prejudicial, was a lie." Additionally, the court had concerns with petitioner's parental fitness, noting "even if I take the domestic violence out of it . . . you got up here and thought it was okay, essentially, to use meth[amphetamine] . . . and that anybody that uses meth[amphetamine] can be a fit parent." Thus, the court denied petitioner's motion for another improvement period and found that terminating petitioner's parental rights was in the children's best interests. Ultimately, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. The court then terminated petitioner's parental rights by order entered on June 14, 2021.[2] It is from the dispositional order that petitioner appeals.

---

[2]The mother is participating in an improvement period. The permanency plan is reunification with the mother upon her successful completion of an improvement period. The concurrent permanency plan for the children is adoption in the current foster homes.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in failing to reinstate his post-adjudicatory improvement period, or, in the alternative, erred in failing to grant him a post-dispositional improvement period. According to petitioner, he demonstrated an ability to comply with the terms of an improvement period as he had "successfully complied with services offered and had reached a level of functioning sufficient to care for [the] children." Petitioner contends that the domestic violence counseling had been implemented for only two months when the court erroneously terminated his post-adjudicatory improvement period and that his relationship with the mother was the only issue to address as he was sober and had housing and employment. Petitioner asserts that he had only begun to learn through counseling that his keeping the mother isolated without a cellphone, taking her car keys, and other controlling actions were abusive, and petitioner should have been able to continue with this counseling. Petitioner also maintains that he was never the aggressor and that the mother started all fights while she was high on methamphetamine.

According to West Virginia Code § 49-4-610(7), "[u]pon the motion by any party, the court *shall* terminate any improvement period . . . when the court finds that [the parent] has failed to fully participate in the terms of the improvement period." (Emphasis added). Here, both the guardian and the DHHR moved to terminate petitioner's post-adjudicatory improvement period upon substantial evidence of his failure to meaningfully participate in the terms of his improvement period, including evidence that petitioner denied having anger and domestic violence issues to address and stated to the therapist that he was only attending counseling and anger management classes because they were court ordered. As such, the court properly terminated petitioner's post-adjudicatory improvement period.

By the dispositional hearing, petitioner continued to deny perpetrating physical domestic violence upon the mother, denied anger issues, blamed the mother for the fights, and claimed that the children lied about his actions, thus showing that he had experienced no change in circumstances to warrant another improvement period. *See* W. Va. Code § 49-4-610(3)(D)

4

(establishing that, in order to obtain a post-dispositional improvement period after having been granted an earlier improvement period, a parent must "demonstrate[] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances"). Below, petitioner's testimony that he was never the aggressor and never engaged in physical domestic violence with the mother was deemed incredible by the circuit court. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Most importantly, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Although petitioner complied with some aspects of his case plan, he failed to "to improve . . . [the] overall attitude and approach to parenting." *In re B.H.*, 233 W. Va. 57, 65, 754 S.E.2d 743, 751 (2014) (citation omitted). Petitioner continued to maintain that he had no domestic violence or anger management issues to address and minimized his role in the domestic violence. As petitioner clearly failed to acknowledge his involvement in the couple's extensive domestic violence history, another improvement period would have been futile. Accordingly, we find no error in the circuit court's denial of petitioner's motion for another improvement period.

Further, this same evidence supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Petitioner failed to respond to or follow through with the rehabilitative efforts designed to reduce or prevent the abuse or neglect of the children as evidenced by his failure to meaningfully participate in anger management and domestic violence counseling. *See* W. Va. Code § 49-4-604(d)(3). Furthermore, termination of petitioner's parental rights was necessary for the children's welfare as the guardian reported that the children wanted no contact with petitioner, and petitioner's concerning opinion regarding substance abuse and parenting would place the children in danger. As such, we find no error in the circuit court's termination of petitioner's parental rights, given that West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights upon these findings.

Lastly, because the proceedings regarding the mother remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 14, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton